STATE OF NEBRASKA, APPELLEE, V. MOHAMED EL-TABECH, APPELLANT.

453 N.W.2d 91

Filed March 23, 1990.   No. 89-389.

Alan G. Stoler for appellant.

Robert M. Spire, Attorney General, and William L. Howland for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

BOSLAUGH, J.

After a jury trial, the defendant, Mohamed El-Tabech, was convicted of murder in the first degree and use of a deadly weapon to commit a felony in the strangulation death of his wife, Lynn El-Tabech, on June 24, 1984. He was sentenced to life imprisonment for the murder and 20 years' imprisonment for the use of a deadly weapon, the sentence on the second count to run consecutively. The judgment was affirmed by this

court in *State v. El-Tabech*, 225 Neb. 395, 405 N.W.2d 585 (1987).

On June 23, 1988, the defendant filed a pro se "Motion to Vacate Conviction and Sentence" pursuant to Neb. Rev. Stat. §§ 29-3001 et seq. (Reissue 1989). An evidential hearing was held on February 23, 1989, on the portions of the motion which alleged the defendant's convictions were unconstitutional because he was not afforded effective assistance of counsel. The defendant claimed that his trial counsel were ineffective because they denied the defendant the right to testify in his own behalf and denied him the right to call certain witnesses, including the victim's former employer and several character witnesses. The defendant further alleged that trial counsel were ineffective in failing to adequately prepare the case for trial and in failing to move for a dismissal of the information based on speedy trial grounds.

The trial court found that counsel's decision not to put the defendant on the stand and not to call certain other witnesses was proper trial strategy; that the defendant had not shown he received ineffective assistance of counsel; and that even if the assistance was deficient, the defendant failed to show there was a reasonable probability that, but for counsel's unprofessional errors, the result of the trial would have been different.

The defendant has appealed and assigns as error the action of the district court in denying him postconviction relief (1) because the defendant's constitutional right to testify was violated and (2) because the defendant did not have effective representation of counsel at trial.

The standard of review for a claim of ineffective assistance of counsel is that set forth in *State v. Jones*, 231 Neb. 110, 112-13, 435 N.W.2d 650, 652 (1989):

> "A defendant seeking postconviction relief has the burden of establishing a basis for such relief, and the findings of the district court will not be disturbed on appeal unless clearly erroneous. [Citations omitted.] ' "When the defendant in a postconviction motion alleges a violation of his constitutional right to effective assistance of counsel as a basis for relief, the standard for determining the propriety of the claim is whether the

attorney, in representing the accused, performed at least as well as a lawyer with ordinary training and skill in the criminal law in the area. Further, the defendant must make a showing of how the defendant was prejudiced in the defense of his case as a result of his attorney's actions or inactions." ' " . . .

. . . "[T]o sustain a claim of ineffective assistance of counsel as a violation of the sixth amendment to the U.S. Constitution and thereby obtain reversal of a defendant's conviction, the defendant must show that (1) counsel's performance was deficient and (2) such deficient performance prejudiced the defense, that is, a demonstration of reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different."

A convicted defendant seeking a reversal of the conviction or sentence for the reason that counsel's assistance was deficient must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

See, also, *State v. Gagliano*, 231 Neb. 911, 438 N.W.2d 783 (1989).

The record shows that the defendant was represented by Deputy Lancaster County Public Defender Scott Helvie from the time of his arraignment in June 1984 until July 1985, when the public defender's office was disqualified from the case because of a conflict of interest. During this period, Helvie and other members of the public defender's office made many contacts with the defendant, took numerous depositions, compiled many volumes of investigatory materials, and adopted a tentative trial strategy.

Kirk Naylor was appointed to represent the defendant after Helvie's office was disqualified in July 1985. Due to the complexity of the case, a second attorney, Jerry Soucie, was appointed to assist Naylor. Both Naylor and Soucie are experienced criminal defense attorneys.

The defendant first claims that Naylor and Soucie were

ineffective in failing to allow him to testify at trial despite his demands to do so, in violation of his rights under the U.S. and Nebraska Constitutions.

As to the decision not to have the defendant testify, Naylor stated that he and the defendant discussed whether the defendant should take the witness stand. The record shows that Naylor and Soucie discussed this issue at length with the defendant and even held practice sessions with the defendant. Naylor became concerned that the defense would be adversely affected by the defendant's testimony. He was of the opinion that the jury would believe the defendant was capable of murder. Naylor also thought the defendant's explosive personality and his tendency to fly into rages would be demonstrated on the witness stand and create a bad impression for the jury. Both Naylor and Soucie expressed concern that on cross-examination, unfavorable testimony would be elicited as to the defendant's background and how he had treated his wife, who was the victim. This information had been the subject of several successful objections or motions in limine.

Naylor and Soucie both stated that the decision not to testify was made by the defendant, based on their advice, and that they all were in general agreement before the trial started that he would not testify. The defendant was aware that the prosecution wanted him on the stand and according to his trial counsel agreed that it was tactically wise to keep the prosecution "in the dark" in that regard. During the trial, the defendant and counsel discussed that it was clever that the defendant had decided not to testify when the prosecution expected him to do so. Although the record of the trial does not specifically reflect that the defendant waived his right to testify, the defendant was present at every conference the defense had with the court, and it was indicated to the court that the defendant would not testify. We note that the defendant also was present during the jury instructions conference and made no comment when his attorneys proposed an instruction referring to the fact that the defendant had not testified.

In an evidentiary hearing for postconviction relief, the trial judge, as the trier of fact, resolves conflicts in the evidence and questions of fact, including the credibility and weight to be

given the testimony of a witness. The trial court's findings will be upheld unless they are clearly wrong. *State v. Domingus, ante* p. 267, 450 N.W.2d 668 (1990). In this case the trial court resolved the conflicts in the evidence against the defendant and determined that counsel were not ineffective in advising the defendant not to testify.

The record also supports a finding that the defendant voluntarily made the decision not to testify. In *U.S. v. Martinez*, 883 F.2d 750, 760 (9th Cir. 1989), the court held that "the court has no duty to advise the defendant of his right to testify, nor is the court required to ensure that an on-the-record waiver has occurred." See, also, *U.S. v. Bernloehr*, 833 F.2d 749 (8th Cir. 1987).

Naylor testified that during the trial there were discussions in chambers with the defendant present "in which we informed the court that Mr. El-Tabech had determined not to testify . . . ." Naylor further testified that "during some of those conferences with the court, it was indicated to the court that he was not going to testify . . . ." Apparently, no record was made of these conferences.

The finding of the district court that "counsel's decision not to put defendant on the stand . . . was proper trial strategy" is not clearly wrong. Cf. *State v. Journey*, 207 Neb. 717, 301 N.W.2d 82 (1981) (defense counsel's advice not to testify, after discussing it with the defendant, was not ineffective where the defendant's prior criminal record could have been used against him). The defendant's first assignment of error is without merit.

The defendant further contends that trial counsel were ineffective in failing to adequately prepare the case for trial, in refusing to call certain witnesses, and in failing to move for a dismissal of the charges based on speedy trial grounds.

Although the defendant claims that his attorneys refused to discuss the case with him, did not conduct a proper investigation, and were not prepared for trial, the record shows that Naylor and Soucie spent a great deal of time conferring with the defendant, investigating, and preparing for trial. In fact, Soucie went to California to interview a prospective witness who Naylor and Soucie discovered might be able to

establish an alibi for the defendant. Soucie succeeded in persuading this witness to return to Lincoln and testify on the defendant's behalf.

The record also shows that Soucie considered filing a motion to dismiss based on speedy trial grounds, but determined that there was no basis for this relief because so many motions had been pending in the case. In any event, a motion for postconviction relief cannot be used as a substitute for an appeal or to secure a further review of issues already litigated on direct appeal or which were known to the defendant and counsel at the time of the trial and which were capable of being raised, but were not raised, in the defendant's direct appeal. *State v. Bostwick*, 233 Neb. 57, 443 N.W.2d 885 (1989).

The defendant complained during the postconviction hearing that his attorneys wrongfully refused to call several persons as character witnesses. The record shows that these individuals could not have qualified as character witnesses because they did not know the defendant well enough to offer opinions as to his character. For instance, the defendant had applied for employment with the FBI and, although the application was never processed, the defendant wanted to call the FBI agent to whom he made the application. None of these proposed witnesses had any substantive information about the homicide. Counsel also noted that calling character witnesses would have "opened the floodgate" to the issue of credibility, which would have been detrimental for the defendant's case.

The defendant specifically complains that trial counsel improperly refused to call the victim's former employer, Peter Levitov, as a witness. The record shows that during the time Helvie was representing the defendant, a tentative theory was developed that they would attempt to adduce evidence of other individuals who might have had motive or opportunity to kill the victim. Apparently, the defendant believed that Levitov would somehow implicate himself in the murder if he were called to testify. Naylor and Soucie testified that the justification for the "Levitov defense" was that Levitov had made certain statements to law enforcement officers regarding aspects of the crime which were not public knowledge. These statements were to be used to draw suspicion away from the

defendant and toward Levitov. During the State's case, however, it became clear that Levitov received his information from members of the victim's family before talking to the police, and counsel then recommended abandoning a defense based on a particular suspect. Further investigation revealed that Levitov was with his wife at a Lincoln restaurant at the time of the murder. Counsel discussed this matter with the defendant, who then made the ultimate decision that Levitov would not be called.

The decision to call, or not to call, a particular witness, made by counsel as a matter of trial strategy, even if that choice proves ineffective, will not, without more, sustain a finding of ineffectiveness of counsel. *State v. Jones*, 231 Neb. 110, 435 N.W.2d 650 (1989); *State v. Ellefson*, 231 Neb. 120, 435 N.W.2d 653 (1989). We determine that trial counsel's decision not to call these witnesses was proper trial strategy. Their testimony would have done nothing to assist the defendant and perhaps would have ensured his conviction. The defendant's contentions are without merit.

Despite his assertions to the contrary, the defendant failed to demonstrate that his trial attorneys failed to perform at least as well as lawyers with ordinary training and skill in the criminal law in the area. Nor did the defendant show that he was prejudiced in the defense of his case as a result of his attorneys' actions or inactions. The defendant's rights under the U.S. and Nebraska Constitutions were neither denied nor infringed so as to render his convictions void or voidable. The judgment of the district court is affirmed.

AFFIRMED.