STATE OF NEBRASKA, APPELLEE, V. JEFFREY M. BLANK, APPELLANT.

474 N.W.2d 689

Filed September 27, 1991.   No. 90-1037.

Robert B. Deck for appellant.

Don Stenberg, Attorney General, and Donald A. Kohtz for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

BOSLAUGH, J.

In 1988, the appellant, Jeffrey M. Blank, was charged with being a felon in possession of a firearm and with being a habitual criminal. Pursuant to a plea bargain, the habitual criminal allegation was dismissed and Blank entered a plea of no contest to the charge of felon in possession. See Neb. Rev. Stat. § 28-1206 (Reissue 1989). Before the date set for sentencing, Blank discovered that Initiative 403 had been passed in November 1988 and the "right to bear arms" amendment to the Nebraska Constitution had been adopted. See *State v. Comeau*, 233 Neb. 907, 448 N.W.2d 595 (1989). Believing he had a defense to the charge based on Initiative 403, Blank filed a motion to withdraw his plea. The motion was overruled, and Blank was sentenced to a term of 16 to 54 months' imprisonment. The conviction and sentence were summarily affirmed on direct appeal. See *State v. Blank*, 234

Neb. xx (case No. 89-373, Dec. 14, 1989).

On July 2, 1990, Blank filed a petition for postconviction relief, pursuant to Neb. Rev. Stat. §§ 29-3001 et seq. (Reissue 1989), alleging his conviction and sentence were void or voidable because he did not receive effective assistance of counsel and because he was arrested and convicted on the basis of evidence obtained pursuant to an unconstitutional search and seizure. On July 24, 1990, the district court appointed legal counsel to represent Blank in this postconviction action. After a hearing on September 20, 1990, the district court dismissed Blank's petition, finding that there was no evidence trial counsel failed to perform at least as well as a lawyer of ordinary training and skill in the criminal law in the area and that there was no evidence Blank was prejudiced in the defense of his case as a result of his attorney's action or inaction or that, but for the ineffective assistance of counsel, there was a reasonable probability the result would have been different.

Blank has appealed to this court, contending the district court erred in overruling his petition (1) because he received ineffective assistance of counsel and (2) because the conviction and sentence were obtained in violation of U.S. Const. amends. IV, V, and VI and Neb. Const. art. I, §§ 3, 7, 11, and 12.

A defendant seeking postconviction relief has the burden of establishing the basis for such relief, and the findings of the district court will not be disturbed unless they are clearly erroneous. *State v. Keithley*, 238 Neb. 966, 473 N.W.2d 129 (1991); *State v. Whitmore*, 238 Neb. 125, 469 N.W.2d 527 (1991); *State v. Salas*, 237 Neb. 546, 466 N.W.2d 790 (1991); *State v. El-Tabech*, 234 Neb. 831, 453 N.W.2d 91 (1990); *State v. Jones*, 231 Neb. 110, 435 N.W.2d 650 (1989).

When the defendant in a postconviction proceeding alleges a violation of his constitutional right to effective assistance of counsel as a basis for relief, the standard for determining the propriety of the claim is whether the attorney, in representing the accused, performed at least as well as a lawyer with ordinary training and skill in the criminal law in the area. The defendant must also show that he was prejudiced in the defense of his case as a result of his attorney's actions or inactions. *State v. Britt*, 237 Neb. 163, 465 N.W.2d 466 (1991); *State v. El-Tabech*,

*supra*; *State v. Jones, supra*. A showing of prejudice to the defense requires a demonstration of reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *State v. Britt, supra*; *State v. Salas, supra*; *State v. El-Tabech, supra*; *State v. Jones, supra*. A reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different is a probability sufficient to undermine confidence in the outcome. *State v. Salas, supra*; *State v. El-Tabech, supra*; *State v. Jones, supra*.

The record shows that Blank was initially incarcerated in the Dakota County jail on August 29, 1988, on two misdemeanor charges. On the morning of August 31, the janitor from the jail asked Dakota County Sheriff James Wagner about the ownership of a green 1971 Pontiac LeMans automobile that had been in the parking lot for several days. The janitor was concerned because the owner of the vehicle could not be identified, and he intended to tow it away.

After the discussion with the janitor, Sheriff Wagner was contacted by two police detectives from Sioux City, Iowa. The detectives told Wagner that they had information there was stolen property in the Pontiac and wanted to obtain a search warrant. A search warrant was issued for the vehicle. Meanwhile, following up on the janitor's request, Deputy Glen Sedivy asked Blank if the Pontiac belonged to him, and Blank indicated that it was his car.

Sheriff Wagner took a set of car keys from Blank's possession locker at the jail. The keys fit the doors to the Pontiac. At this time, Wagner saw that the Pontiac had a California license plate fitted over another license plate. He removed the California plate, discovered a Nebraska plate underneath, and determined that the Nebraska license plate was registered to Rhonda or Jeffrey Blank.

During the search of the automobile, several items were seized and turned over to the Sioux City, Iowa, authorities. Sheriff Wagner also confiscated a sawed-off shotgun that he found wrapped in a towel in the trunk of the Pontiac.

Bond had been set on the misdemeanor charges. Two women came to bond Blank out of jail between 1:30 and 2:30 p.m. on

August 31, 1988, but were told that they had to wait. Approximately 45 minutes to 1 hour later, the women were told that new charges had been filed against Blank and that he could not be bonded out of jail.

On September 1, 1988, Blank was charged with being a felon in possession of a firearm and with being a habitual criminal. The next day, Randy Hisey, an attorney with 12 years' experience in criminal defense work, was appointed to represent Blank. After a preliminary hearing held September 30, 1988, Blank was bound over to the district court and was arraigned in the district court on October 11, 1988.

Hisey testified at the postconviction hearing that Blank was a demanding client and that Hisey was required to make very few judgment calls because Blank "called virtually all the shots in the course of the representation" and was very much in control of the defense. The record shows that Hisey filed numerous pretrial motions on Blank's behalf, including an application to use the law library; an application to return Blank to the Dakota County jail from the Diagnostic and Evaluation Center in Lincoln; a motion for the return of the 1971 Pontiac LeMans automobile seized in connection with the execution of the search warrant on August 31, 1988; a motion to receive medical care from his personal physician in Sioux City, Iowa; a motion for jail privileges; two motions to suppress evidence seized during the search warrant execution on August 31, 1988; several motions for bond reduction; motions to produce defendant's statements, for discovery and inspection of documents, and for leave to take depositions; a motion to secure witnesses from without the state; an application to disclose an informant's identity; an application for the appointment of an additional attorney; and an application for transfer back to the Diagnostic and Evaluation Center in Lincoln.

The felony charges were originally scheduled for trial to a jury on December 6, 1988. Blank's discovery motions were sustained on November 15, 1988. During a suppression hearing also held on November 15, the court considered Blank's arguments that the search warrant for his vehicle was obtained in violation of the U.S. and Nebraska Constitutions. The

matter was taken under advisement. The court heard further argument and on December 1, 1988, overruled Blank's motions to suppress evidence.

Meanwhile, Hisey had entered into plea negotiations on Blank's behalf, seeking mainly to have the habitual criminal charge dismissed. According to Hisey, the possibility of sentence enhancement under the habitual criminal statute was one of Blank's major concerns.

On December 21, 1988, the parties filed a plea agreement in which Blank agreed to plead no contest to possession of a firearm by a felon. After pleading no contest, Blank would be transported to the Diagnostic and Evaluation Center in Lincoln. Pursuant to the agreement, each party was free to argue recommendations at the sentencing. After the lapse of the appeal time, the State was to dismiss all charges pending against Blank, including habitual offender allegations. The State also agreed not to file any potential charges of which the State had knowledge as of the date of the plea agreement and agreed to recommend that Blank receive credit for time served since August 29, 1988. In turn, Blank agreed to dismiss a civil case he filed in federal court against the Dakota County sheriff and promised not to file any action against other Dakota County employees as a result of these charges, the search of his vehicle, the investigation, his incarceration in the Dakota County jail, or anything else which might have accrued as of the date of the plea agreement. Finally, the State agreed to release Blank's 1971 Pontiac after removing any contraband or stolen property.

The court accepted Blank's plea of no contest on December 21, 1988, and scheduled a sentencing hearing for February 14, 1989. On February 10, 1989, Hisey filed a "Motion to Dismiss or to Withdraw Plea of No Contest or to Arrest Judgment" on Blank's behalf, contending that § 28-1206 was unconstitutional under Neb. Const. art. I, § 1, as amended by Initiative 403 on November 8, 1988, and that in light of Initiative 403, Blank had a good defense to the charge. The motion was overruled, and Blank was sentenced to 16 to 54 months' imprisonment.

In this appeal, Blank contends Hisey did not effectively represent him because Hisey did not timely discover the passage of Initiative 403 and failed to determine its effect on the charge

against Blank. This argument is without merit. In *State v. Comeau*, 233 Neb. 907, 448 N.W.2d 595 (1989), we held that § 28-1206 was not invalid as in conflict with Neb. Const. art. I, § 1, as amended by Initiative 403. See, also, *State v. Harrington*, 236 Neb. 500, 461 N.W.2d 752 (1990). This holding eliminates any possibility of prejudice to Blank by virtue of the fact he did not know of the adoption of Initiative 403.

Blank also claims he received ineffective assistance of counsel because Hisey failed to obtain the search warrant and affidavit for search warrant to offer in evidence at the suppression hearings, and failed to determine whether those documents were included in the court file of which the district court took judicial notice. In this regard, Blank contends that "the Sheriff's Office (or other law enforcement officers) were taking the Defendant's personal belongings (i.e. car keys) without a warrant" and that the officers "probably" searched the vehicle before obtaining the warrant. Again, Blank fails to show how he was prejudiced by these alleged omissions. The warrant and affidavit referred to were not offered in evidence during the postconviction hearing and are not part of the record presented to this court.

Blank further contends Hisey performed ineffectively because he did not request rulings on "numerous motions," including a motion for psychiatric evaluation, before the plea and sentencing. Aside from the motion for psychiatric evaluation, Blank has not specified which of the "numerous motions" he feels would have influenced his decision to enter into the plea agreement. Apparently, the district court had not ruled on Blank's motion to secure witnesses from without the state or his motion to disclose the informant's identity. Hisey testified that he advised Blank that any pending motions would, in effect, become moot if Blank pled no contest. The record further shows that the court advised Blank at length about his rights pertaining to these matters before accepting the no contest plea. Specifically, the record shows that Blank understood that by pleading no contest he would waive his rights to confront his accusers and to subpoena witnesses in his defense. The record shows that Blank voluntarily waived these rights and that his contentions to the contrary are without

merit.

Hisey testified at the postconviction hearing that he filed a motion for psychiatric evaluation on December 9, 1988, at Blank's request, although Hisey never personally felt that Blank was irrational or that Blank needed a psychiatric evaluation. Hisey did not request a ruling on the motion because Blank wanted to proceed with the plea agreement. At the time the court accepted Blank's plea, Hisey told the court he believed Blank was making his plea voluntarily, knowingly, and intelligently. In accepting the plea, the court found that Blank fully understood his rights; that he was acting voluntarily; that he fully understood the nature of the charge against him, the consequences of his plea, and the penalty that could be imposed; and that the plea was made intelligently, voluntarily, and knowingly. Although Blank now contends he was irrational and confused when he entered the plea, the evidence shows otherwise.

Despite his assertions to the contrary, Blank has failed to demonstrate that his attorney failed to perform at least as well as a lawyer with ordinary training and skill in the criminal law in the area. Nor has Blank shown that he was prejudiced in the defense of his case as a result of his attorney's actions or inactions. His rights under the U.S. and Nebraska Constitutions were neither denied nor infringed so as to render his conviction void or voidable. The judgment of the district court is affirmed.

AFFIRMED.