COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

SHAWN CHRISTOPHER RICHARDS,

        Defendant-Appellant.

UNPUBLISHED
September 10, 2015

No. 322446
Kent Circuit Court
LC No. 13-007442-FC

Before: BOONSTRA, P.J., and MURPHY and MARKEY, JJ.

PER CURIAM.

Defendant was convicted, following a jury trial, of assault with intent to murder, MCL 750.83, and second-offense domestic assault, MCL 750.81(3). The trial court sentenced defendant within the guidelines to concurrent sentences of 11-1/2 to 25 years' imprisonment for assault with intent to murder and to 344 days for second-offense domestic assault, with credit for 344 days served. Defendant appeals by right. We affirm defendant's convictions, but remand for consideration of his sentence in light of *People v Lockridge*, ___ Mich ___; ___ NW2d ___ (Docket No. 149073, decided July 29, 2015).

I. PERTINENT FACTS AND PROCEDURAL HISTORY

Defendant and the victim, Ashley Miller, lived in the same home and have one child together. According to Miler, defendant told her, during a heated physical altercation, "I'm going to f***ing kill you," and stabbed her in the neck with a kitchen knife. Defendant thereafter drove the victim and her two children to the hospital, instructing her to tell hospital employees that she had slipped and fell on the knife while washing dishes. The victim initially told this story to her nurse, but eventually revealed that defendant had stabbed her. Police officers took defendant into custody and questioned him regarding the incident, but defendant denied ever possessing the knife and told officers that the victim's wound was the result of a dishwashing accident.

At sentencing, defendant objected to the assessment of 10 points for offense variable (OV) 4 (psychological injury), arguing it should be assessed at zero points because the victim never sought psychological treatment. The prosecution opposed the reduction in scoring, noting that the case law is clear that seeking treatment is not required and arguing that "assault with intent to murder . . . by its very nature implies that there could be psychological problems." In response to the objection, the trial court noted that "had the cut been just a very minor distance

away from where it actually happened, it could have very well resulted in [the victim's] death." The court acknowledged that it "d[id]n't have . . . with specificity from the victim any specific indication that she needs psychological help," but noted that the injury occurred within "a relationship she had with the defendant over a period of time" that had been beset with domestic violence. Looking at the facts of the case as a whole, the trial court stated that "it seems to be reasonable under these circumstances" to conclude that the victim suffered serious psychological injury supporting assessment of 10 points for OV 4.

In response to defense counsel's second scoring objection, the trial court reduced the scoring of OV 7 (sadism, torture, excessive brutality) from 50 points to 0 points. This reduced defendant's total OV score to 100 points, resulting in no reduction to the recommended guidelines range of 135 months to 225 months. The trial court sentenced defendant within the guidelines as previously stated. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant challenges the sufficiency of the evidence for his assault with intent to murder conviction. This Court reviews insufficient evidence claims de novo. *People v Hawkins*, 245 Mich App 439, 457; 628 NW2d 105 (2001). We review evidence in a light most favorable to the prosecution to determine whether a rational jury could have found that the essential elements of the crime were proven beyond a reasonable doubt. *People v Hunter*, 466 Mich 1, 6; 643 NW2d 218 (2002). We defer to a jury's evaluation of witness credibility and weight given to evidence. *People v Eisen*, 296 Mich App 326, 331; 820 NW2d 229 (2012).

To establish the offense of assault with intent to murder, the prosecution must show that defendant perpetrated

> (1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder. [*People v Lawton*, 196 Mich App 341, 350; 492 NW2d 810 (1992); see also MCL 750.83.]

Defendant argues that the prosecution provided insufficient evidence of his actual intent to kill. In determining intent to kill, a jury may consider circumstantial evidence and reasonable inferences from that evidence. *People v McRunels*, 237 Mich App 168, 181; 603 NW2d 95 (1999). "[M]inimal circumstantial evidence is sufficient" to support a finding of intent to kill. *Id*. Such circumstantial evidence may include the defendant's statements and conduct before, during, and after the assault. *People v Taylor*, 422 Mich 554, 568; 375 NW2d 1 (1985).

The record shows that the prosecution submitted ample evidence from which a reasonable jury could conclude that defendant intended to kill the victim when he stabbed her. Before the stabbing, defendant and the victim were in a heated argument. During the argument, defendant obtained a knife and removed its sheath. According to the victim, defendant told her, immediately before assaulting her, "I'm going to f***ing kill you." He then stabbed the victim in a vital area. Intent to kill may be inferred from "the severity and vastness" of a wound inflicted by a defendant, *People v Mills*, 450 Mich 61, 71; 537 NW2d 909 (1995), and evidence adduced at trial established that the wound was life-threatening and near vital arteries. On the record before us, the evidence was sufficient to support defendant's conviction beyond a

-2-

reasonable doubt. *Hunter*, 466 Mich at 6. Defendant's challenge to the sufficiency of the evidence ultimately amounts to no more than disagreement with the verdict because the jury could have drawn other inferences more favorable to him, based on his version of events to which he testified. However, it was precisely the province of the jury to evaluate witness credibility and weigh evidence; thus the jury was free to find the victim more credible than defendant. *Eisen*, 296 Mich App at 331.

## III. OFFENSE VARIABLE FOUR

Defendant further argues that the trial court erred in assessing 10 points for offense variable (OV) 4, which accounts for psychological injury to a victim. We review a preserved scoring challenge for clear error, determining whether the factual determinations underlying an OV assessment are supported by a preponderance of the evidence. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). MCL 777.34 directs trial courts to assess 10 points where "[s]erious psychological injury requiring professional treatment occurred to a victim," and states that "the fact that treatment has not been sought is not conclusive." A victim's "statements about feeling angry, hurt, violated, and frightened" support assessment of 10 points for OV 4. *People v Williams*, 298 Mich App 121, 124; 825 NW2d 671 (2012). Trial testimony established that during the altercation the victim was "constantly screaming for help as loud as [she] could at the top of [her] lungs"; that she felt threatened by defendant; and that she broke into tears when first telling her nurse that defendant had stabbed her. Because the record contains evidence justifying the assessment of 10 points for OV 4, defendant is not entitled to a scoring reduction and resentencing on that ground. In reaching our conclusion, we note that in scoring 10 points the trial court relied on the seriousness of the injury and the relationship between defendant and the victim. A trial court "may not simply assume that someone in the victim's position would have suffered psychological harm." *People v Lockett*, 295 Mich App 165, 183; 814 NW2d 295 (2012). The trial court's stated reasons for scoring OV 4 at 10 points did not directly bear on whether this particular victim suffered psychological injury; in fact the trial court noted its lack of information concerning the victim's psychological state. Nevertheless, unlike in *Lockett*, the record here was not "devoid of evidence" indicating whether the victim suffered a serious psychological injury. *Id*. Thus, were the state of the law the same as when this case was before the trial court, we would affirm this OV score. See *People v Mayhew*, 236 Mich App 112, 118 n 2; 600 NW2d 370 (1999) (This Court will not reverse a lower court where it "reached the right result for a wrong reason.")

Nonetheless, in light of our Supreme Court's recent decision in *Lockridge*, we conclude that remand is appropriate to allow the trial court to determine whether it would have imposed the same sentence in light of the advisory nature of the sentencing guidelines.

In *Lockridge*, the Supreme Court held that in order to avoid any Sixth Amendment violations, Michigan's sentencing guidelines scheme was to be deemed advisory, instead of being mandatory. *Id*. at __ (slip op at 28). The concern is that when a judge makes findings of fact "beyond facts admitted by the defendant or found by the jury" in a sentencing proceeding that increases a defendant's minimum sentence, this runs afoul of a defendant's right to a jury trial. *Id*. at __ (slip op at 1). As a result, the guidelines no longer can be considered mandatory, but sentencing judges must consult the guidelines and " 'take them into account when

-3-

sentencing.' " *Id*. at __ (slip op at 28), quoting *United States v Booker*, 543 US 220, 264; 125 S Ct 738; 160 L Ed 2d 621 (2005).

In determining whether there is any plain error under this new scheme, the first inquiry is whether the facts admitted by the defendant and the facts necessarily found by the jury "were sufficient to assess the minimum number of OV points necessary for the defendant's score to fall in the cell of the sentencing grid under which he or she was sentenced." *Id*. at __ (slip op at 32). If the answer is "yes," then a defendant cannot establish any plain error. *Id*. at __ (slip op at 32). If the answer is "no," then a remand to the trial court is required to allow it to determine whether, now aware of the advisory nature of the guidelines, if the court would have imposed a materially different sentence. *Id*. at __ (slip op at 34). If the court determines that it would have imposed a materially different sentence, then it shall order resentencing. *Id*. at __ (slip op at 34).

In this case, the points scored for OV 4 were not necessarily found by the jury. Although some evidence supporting the scoring was introduced by the victim's testimony at trial, it was not necessary, in convicting defendant of the charged offenses, for the jury to find that the victim had screamed, felt threatened by defendant, or cried when telling the nurse that defendant had stabbed her. Further, although the trial court's stated reasons for scoring OV 4 *were* based on facts necessarily found by the jury (the severity of the injury and the relationship between defendant and victim), those reasons did not provide valid support for the score.

"[A]ll defendants (1) who can demonstrate that their guidelines minimum sentence range was actually constrained by the violation of the Sixth Amendment and (2) whose sentences were not subject to an upward departure can establish a threshold showing of the potential for plain error sufficient to remand to the trial court for further inquiry[,]" i.e., a "*Crosby*"[1] remand. *Lockridge*, slip op at 33. Because a score of zero for OV 4 would alter defendant's sentencing range under the guidelines by reducing his OV score to 90 (and thus dropping his OV level from VI to V), and defendant's current OV score is not supported by facts necessarily found by the jury or admitted by defendant, we conclude that such a remand is compelled by *Lockridge*. On remand, the trial court should determine whether it would have imposed a "materially different" sentence if it had been aware of the advisory nature of the guidelines. *Id*., slip op at 34. Our Supreme Court set forth the requirements for a *Crosby* remand as follows:

> [O]n a *Crosby* remand, a trial court should first allow a defendant an opportunity to inform the court that he or she will not seek resentencing. If notification is not received in a timely manner, the court (1) should obtain the views of counsel in some form, (2) may but is not required to hold a hearing on the matter, and (3) need not have the defendant present when it decides whether to resentence the defendant, but (4) must have defendant present, as required by law, if it decides to resentence the defendant. Further, in determining whether the court would have imposed a materially different sentence but for the unconstitutional constraint, the court should consider only the circumstances existing at the time of the original sentence. [*Id*., slip op at 35-36.]

---

[1] *United States v Crosby*, 397 F3d 103 (CA 2, 2005).

Affirmed as to defendant's convictions.  Remanded with regard to defendant's sentence.  We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ William B. Murphy
/s/ Jane E. Markey